IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| CASSIDY RAY HANDLEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-17-832-SM |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Cassidy Ray Handley (Plaintiff) brings this action for judicial review of the Defendant Commissioner of Social Security's final decision he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 12, 15.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned reverses and remands the Commissioner's final decision. *See* 42 U.S.C. § 405(g).[1]

---

[1] For the parties' briefs, the undersigned's page citations refer to this Court's CM/ECF pagination. Page citations to the AR refer to that record's original pagination.

I.   **Administrative determination.**

   A.   **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

   B.   **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant timeframe. AR 68-78; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had the severe impairments of degenerative disc disease, status post right heel fracture, and anxiety;

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[2] to perform light work and can lift up to twenty pounds occasionally, has the ability to stand or walk up to six hours, occasionally stoop, crouch, kneel, frequently handle objects as gross manipulation as well as frequently use his hands bilaterally to finger small objects, can understand, remember and carry out simple instructions only, and can maintain no more than occasional interaction with the general public;

(4) could not perform any of his past relevant work;

(5) could perform jobs that exist in significant numbers in the national economy, such as electrical accessory assembler, inspector packer, and bottling attendant; and therefore,

(6) was not disabled from August 10, 2010 through June 13, 2016.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

AR 70-78.

### 2. Appeals Council findings.

The Social Security Administration's Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

B. **Issues for judicial review.**

Plaintiff alleges the ALJ erred when he: (1) "failed to follow the treating source/physician rule with respect to the opinions of Dr. Biggers, Plaintiff's treating physician"; (2) "failed to properly assess the Plaintiff's RFC"; and (3) failed at step two "to discuss whether Plaintiff's Carpal Tunnel Syndrome was a Severe Impairment." Doc. 21, at 5; *id.* at 5-16.

Plaintiff's first claim of error requires a remand. Due to the remand, the court does not reach the merits of the remaining claims.

C. **Analysis.**

1. **The treating-physician inquiry.**

The SSA tells claimants that it generally "give[s] more weight to opinions from your treating sources . . . ." 20 C.F.R. § 404.1527(c)(2). It explains this is so "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations." *Id.*

A two-part test applies when an ALJ "evaluat[es] the medical opinions of a claimant's treating physician . . . ." *Krauser*, 638 F.3d at 1330. At the first step, the ALJ must determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart,*

5

350 F.3d 1297, 1300 (10th Cir. 2003). The opinion of a treating physician must be given controlling weight if it is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Krauser,* 638 F.3d at 1330.

At the second step, the ALJ must determine what level of deference, if not controlling weight, to give the treating physician's opinion: "[E]ven if a treating physician's opinion is not entitled to controlling weight, however, treating source medical opinions are still entitled to deference and must be weighed using all of the [20 C.F.R. § 404.1527] factors . . . ." *Victory v. Barnhart*, 121 F. App'x 819, 822 (10th Cir. 2005) (internal quotations and citations omitted).

> These six factors are:
>
> > (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser,* 638 F.3d at 1331 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical opinion and the

6

reason for that weight." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004).

### 2. The treating-physician's opinions.

Dr. Biggers is a primary-care physician who reestablished care with Plaintiff in November of 2014 and has been treating Plaintiff throughout the adjudication of this matter. AR 75, *see id.* at 663.

In November of 2014, Dr. Biggers examined Plaintiff following a June of 2014 motor vehicle accident and addressed several complaints, most notably "back pain," "pain in joint, ankle, and foot," and "carpal tunnel syndrome." *Id.* at 74, 665. Dr. Biggers provided a "cock-up wrist splint" for Plaintiff to wear and instructed Plaintiff to "[a]void repetitive activities and modify use of hand and wrist to reduce symptoms." *Id.* at 666. Dr. Biggers also prescribed muscle relaxants and painkillers for pain in Plaintiff's back and hands. *Id.* at 665-67.

The medical records indicate Dr. Biggers examined Plaintiff on at least three additional occasions between November 2014 and January 2016. *See id.* at 600-18. During the subsequent examinations, Dr. Biggers conducted diagnostic testing on Plaintiff and continued to prescribe muscle relaxants and painkillers for Plaintiff. *See, e.g., id.* at 606-08.

On January 14, 2016, Dr. Biggers provided a physical RFC questionnaire for Plaintiff. *See id.* at 677-81. Dr. Biggers diagnosed Plaintiff with a right-foot injury, carpal tunnel syndrome in both wrists, ADD/ADHD, and sciatica.

7

*Id.* at 677. Dr. Biggers identified Plaintiff's symptoms as right-foot pain, "[n]umbness/weakness/pain" in both hands, "[d]ifficulties [with] task completion, and "numbness [in right] buttock [and right] knee." *Id.* Dr. Biggers noted Plaintiff has "[s]ignificant pain [in both] hands, [right] foot, [right] leg [r]esulting in debilitation, [and] ambulatory difficulty." *Id.*

As a result of these findings Dr. Biggers opined that Plaintiff could not walk a city block without rest, could not continuously sit at one time for more than 10 minutes, could not continuously stand for any length of time, could "grasp," "turn," or "twist objects" with either hand for "< 1%" of an eight-hour working day, could do "fine manipulations" with his fingers for "1%" of an eight-hour working day, should not bend or twist at the waist, and that Plaintiff's impairments or treatment would cause Plaintiff to be absent from work "[m]ore than three times a month." *Id.* at 679-81.

### 3. The ALJ's application of the treating-physician rule.

The ALJ reviewed Dr. Biggers' opinion and assigned "very little weight to the overall assessment." *Id.* at 75. As support, the ALJ found as follows: "The record lacks any clinical or diagnostic testing to confirm or rule out several diagnoses including carpal tunnel syndrome . . . Dr. Biggers is a Family Practice physician and not a specialist in musculoskeletal or neurological diseases." *Id.* Though the ALJ noted that "[p]er the Regulations, the undersigned accords little evidentiary weight to Dr. Biggers' Assessment in

8

deference to his treating relationship and general knowledge of medicine and the claimant's various issues," the ALJ repeated that because "[Dr. Biggers' opinion had] no basis in clinical or diagnostic verification, the undersigned can accord very little weight to the overall assessment." *Id.* In the ALJ's summary of the evidence, the ALJ repeats: "[a]s for the opinion evidence, as noted, the treating physician's opinion is accorded little weight as it is not supported by clinical and diagnostic testing." *Id.* at 76.

A closer examination of the medical records in evidence, however, demonstrates that the ALJ either overlooked certain findings or engaged in impermissible picking and choosing of the record. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted). As Plaintiff correctly points out, in March of 2015 Dr. Biggers performed the Tinel's and Phalen's tests on Plaintiff, which are examinations used to diagnose carpal tunnel syndrome,[3] as well as other tests on Plaintiff's wrists and hands. Doc. 21, at 10; *see* AR 606[4]. The Commissioner acknowledges this "clinical evidence." *See* Doc 23, at

---

[3]   *See* https://www.webmd.com/pain-management/carpal-tunnel/carpal-tunnel-diagnosis#1 (last visited July 25, 2018).

[4]   Plaintiff also correctly points out that Dr. Richard Langerman, an orthopedic surgeon, conducted these same tests on Plaintiff in September 2014. Doc. 21, at 10; *see* AR 529. Plaintiff tested positive and Dr. Langerman noted

9

9. The ALJ's finding that "[t]he record lacks any clinical or diagnostic testing," AR 75, is not supported by substantial evidence. The ALJ failed to address significant probative evidence contained in Dr. Biggers' treatment records. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Further, the court evaluates the ALJ's decision "based solely on the reasons stated in the decision." *Robinson*, 366 F.3d at 1084. The Commissioner concedes "Plaintiff is correct: there were two cursory notations that Plaintiff had clinical evidence of carpal tunnel syndrome." Doc. 23, at 9. However, the Commissioner's argument that "the ALJ reasonably found Dr. Biggers's opinion was not supported by the longitudinal record and permissibly discounted it," provides post-hoc rationales for the ALJ's decision. *Id.*; *see, e.g.*, *Allen v. Barnhart,* 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

---

he was "sure [Plaintiff] has some component of carpal tunnel syndrome." AR 529.

The ALJ's error is not harmless. Harmless error may apply "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way." *Allen v. Barnhart*, 357 F.3d at 1145. That exceptional circumstance does not exist here. By ignoring evidence of "medically acceptable clinical or laboratory diagnostic techniques" used by Dr. Biggers, the ALJ failed to properly carry out the first step of the treating-physician inquiry. The ALJ's decision to accord "very little weight" to the treating physician is not supported by substantial evidence, and the ALJ's incomplete analysis of the treating-physician opinion requires reversal of the Commissioner's decision and remand for further proceedings..

## III. Conclusion.

The court REVERSES and REMANDS the Commissioner's decision.

ENTERED this 30th day of July, 2018.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE